IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ALBERT EKEKHOR, DENEST AKINTAJU, AND OLUGBENGA OKETONA, <br><br> Plaintiffs <br><br> v. <br><br> AON SERVICE CORP., a/k/a AON CORP., DAVID BOLGER, in his individual capacity and official capacity as CHIEF FINANCIAL OFFICER, LISA GROENHEIM, in her individual capacity and official capacity as VICE PRESIDENT, ROBERT RIZZO, in his individual capacity and official capacity as DIRECTOR, <br><br> Defendants. | No. 05 C 99 <br><br> The Honorable William J. Hibbler |

## MEMORANDUM OPINION AND ORDER

The Plaintiffs, three African American males, sued their employer, Aon Service Corporation and several of its executives, alleging that the Defendants discriminated against them when they failed to promote them to supervisory accountant positions within the company. Plaintiffs bring claims under Title VII of the Civil Rights Act of 1964 (race and gender) (Counts I & II), 42 U.S.C. § 1981 (Count III), the Equal Pay Act (Count IV), retaliatory demotion (Count V), and intentional infliction of emotional distress (Count VI). Defendants move for summary judgment on all counts.[1]

I. Factual Background

Plaintiffs Albert Ekekhor, Denest Akintaju, and Olugbenga Oketona worked at Aon's Financial Support Center (FSC) in Glenview, Illinois. (Def. Aon 56.1(a)(3) St. ¶ 2). Within the

---

[1] Plaintiffs raise only their § 1981 and intentional infliction of emotional distress claims against the individual defendants.

1

FSC, Aon utilized two groups: one handled fixed assets (which the parties sometimes refer to as accounts payable) and another handled bank reconciliations and accounting. (Anyaegbunam Dep. at 56-58). The Plaintiffs worked in accountant positions in the bank reconciliations group, although all three occasionally worked on projects in the fixed assets group. (Ekekhor Dep. at 208, 212; Oketona Dep. at 76-77, Akintaju Dep. at 37-38; Pl. 56.1(b)(3) St., Exs. 8-9). In 2003, Akintaju and Oketona held the title of Senior Accountant. (Akintaju Dep. at 36; Oketona Dep. at 75). At the same time, Ekekhor held the title of Staff Accountant. (Ekekhor Dep. at 91, 291, 293).[2] The bank reconciliations group contained four "teams," and the Plaintiffs and Kasia Makowiecki, a white female, served as "Team Leaders." (Anyaegbunam Dep. at 150, 178). The team leaders reported to the Accounting Supervisor, Ray Earley. (Anyaegbunam Dep. at 45-47; 61-62). Earley reported to Patrick Anyaegbunam, the Manager for the reconciliations group. (Anyaegbunam Dep. at 45-47; 61-62).

Late in 2003, Aon hired Robert Rizzo as the Director of the FSC, and Rizzo then became Anyaegbunam's supervisor. (Rizzo Dep. at 39-40; Def. Aon St. at ¶ 20). Shortly after his hire, Rizzo determined that Aon should reorganize the FSC Accounting Department because, in part, the bank reconciliations group's process was very manual and prone to error. (Rizzo Dep. at 92-98). Rizzo also found that the communication from management within the department was poor and the department was reactive rather than proactive. (Rizzo Dep. at 95-98; Def. Aon St., Ex. 5). Throughout his evaluation of the FSC Accounting Department, Rizzo communicated with Lisa

---

[2] In May 2003, Aon classified all accountants working for bank reconciliations as "staff accountants, with subclassification of "accounting specialist," "accountant," and "senior accountant," depending on an employee's experience and expertise. (Def. Aon St., Ex. 4).

2

Groenheim, who served as Aon's Controller and who supervised Rizzo. (Pl. St., Exs. 45, 49, 51, 56-58, 62, 64).

In November 2003, Rizzo forwarded Groenheim the resume of Margie Casanova, with whom he had previously worked, in an e-mail and asked Groenheim if she knew of any positions Aon had available that might be suitable for Casanova. (Pl. St., Ex. 49). By December 4, 2003, Rizzo's plans to reorganize the department began to crystallize. Rizzo proposed, among other things, that Aon should staff the FSC Accounting Department with two accounting supervisors, who would report to the Manager, Anyaegbunam. (Pl. St., Ex. 45). Rizzo further proposed that Earley be reassigned from his position as Accounting Supervisor. (Pl. St., Ex. 45; Rizzo Dep. at 110-111). Finally, Rizzo recommended that Makowiecki replace Earley and fill one of the two supervisory positions. (Pl. St., Ex. 45; Pl. St. at ¶ 148). Anyaegbunam expressed some concerns to Rizzo regarding his selection of Makowiecki, but Rizzo nonetheless recommended her to fill Earley's position. (Pl. St. at ¶ 181-183). Rizzo based his recommendation on his observation of the team leaders during the four months since his hire. (Rizzo Dep. at 128-29; Pl. St. at ¶ 197). Rizzo believed that each of the Plaintiffs had work-quality issues, including communication problems, failure to remain in touch with customers, and the quantity and timeliness of their work. (Rizzo Dep. at 124-25). Contrary to Aon's policy, Rizzo never posted the availability of Earley's position or sought applications from Aon employees. (Pl. St. at ¶ 198).

Groenheim reviewed Rizzo's proposals and approved Makowiecki's promotion and the creation of an additional supervisory position (although at the time she desired to eventually eliminate Anyaegbunam's managerial position). (Groenheim Dep. at 87-89, 106-108, 117-119). Groenheim also instructed Rizzo to take the lead in filling the remaining supervisory position.

3

(Groenheim Dep. at 101-102; Pl. St. at ¶ 250). When the Plaintiffs learned that Makowiecki had been promoted to a supervisory position, they questioned Rizzo as to why they had not been considered. (Def. Aon St. at ¶ 54; Pl. St. at ¶ 276). Rizzo evaded answering directly and instead informed them that another position was available and that they could apply for that position through human resources. (Def. Aon St. at ¶ 55; Pl. St. at ¶¶284-86). All three Plaintiffs applied for the second supervisory position, which Rizzo did post and accept applications for. (Def. Aon St. at ¶¶ 68, 72).

After receiving and reviewing applications forwarded by human resources, Rizzo made the decision to hire Casanova, and Aon hired her on February 16, 2004. (Def. Bolger St., Ex. 1; Groenheim Dep. at 133-34). After learning of Casanova's hire a week later, the Plaintiffs each sent an e-mail to Groenheim expressing their dissatisfaction over Rizzo's decisions and confusion as to the criteria Rizzo used to fill the supervisory positions. (Def. Aon St., Ex. 9). Prior to receiving the Plaintiffs' complaints, Groenheim could not recall meeting the Plaintiffs, had little contact with them, and did not know of the Plaintiffs' specific qualifications for any position. (Groenheim Dep. at 46-52, 208; Akintaju Dep. at 39). Groenheim forwarded the Plaintiffs' e-mails to Rizzo and discussed the Plaintiffs' complaints with both Rizzo and Anyaegbunam. (Def. Aon. St., Ex. 9 at ASC 289).

In response to Groenheim's e-mail, Rizzo informed Groenheim that human resources did not believe the Plaintiffs to be qualified for the second supervisory position, primarily because of a lack of supervisory experience, and so they did not receive interviews. (Def. Aon St., Ex. 9 at ASC 289). Anyaegbunam reported to Groenheim that he supported the choices for both supervisory positions.

(Def. Aon St., Ex. 9 at ASC 289). At the time, Groenheim believed that Anyaegbunam had been involved in Rizzo's decision-making process. (Def. Aon St., Ex. 9 at ASC 289).

On February 25, 2004, Groenheim met with the Plaintiffs, Rizzo, Anyaegbunam, and Earley. (Akintaju Dep. at 77; Def. Aon St., Ex. 9). At the meeting, the Plaintiffs expressed concern that Rizzo's selection was contrary to policy because Makowiecki was promoted two levels from Staff Accountant to Supervisor and because Makowiecki had been on maternity leave when she received the promotion. (Ekekhor Dep. at 56-57 Akintaju Dep. at 65, 69-70; Oketona Dep. at 79-83). The Plaintiffs also protested that they believed Rizzo had not considered them for either position. Rizzo responded to the Plaintiffs' complaints, and Groenheim directed Rizzo and Anyaegbunam to meet individually with each of the Plaintiffs to discuss the "skillsets each of them needed to work on . . . in order to move forward in their career[s]." (Def. Aon St., Ex. 9 at ASC 289). At the conclusion of the meeting, Groenheim pledged to further investigate the Plaintiffs' claims involving the selection process for the supervisory positions. (Def. Aon St., Ex. 9 at ASC 289).

After the meeting, Groenheim asked Rizzo and Anyaegbunam to provide her with their account of the supervisor selection process. (Def. Aon St. ¶ 50). Rizzo told Groenheim that he had asked Anyaegbunam to assess the qualifications of the four team leaders (the three Plaintiffs and Makowiecki) and that both Anyaegbunam and Earley recommended Makowiecki for the position. (Def. Aon St., Ex. 9). Anyaegbunam, however, reported to Groenheim that, when Rizzo told him of his intent to promote Makowiecki, he had informed Rizzo of his concerns regarding Makowiecki and that Rizzo disregarded his opinion. (Def. Aon St., Ex. 9). Anyaegbunam also indicated to Groenheim that otherwise he had not been involved in the selection process. (Def. Aon St., Ex. 9). Groenheim also spoke with Earley about Rizzo's decision, and Earley also told her that he was not

5

involved in the selection process, but that, unlike Anyaegbunam, he would have selected Makowiecki for the position. (Def. Aon St., Ex. 9). In addition, Anyaegbunam reported behavior that he (and later Groenheim) believed gave the appearance of discrimination — including an incident where, after announcing Makowiecki's promotion, Rizzo asked certain white employees to remain behind. (Def. Aon St., Ex. 9; Groenheim Dep. at 212).

After completing her investigation, Groenheim concluded that Rizzo did not properly document the selection process, but that, based on Anyaegbunam's and Earley's differing opinions regarding Makowiecki's promotion, reasonable minds could differ on the selection decisions and that there was no evidence that Rizzo had acted in a discriminatory fashion. (Groenheim Dep. at 212, 217-18, 221-24). In light of Rizzo's failure to document the selection process and in light of the concerns raised by Anyaegbunam surrounding Rizzo's use of managerial authority, however, Groenheim terminated Rizzo's employment.

Sometime after Groenheim's investigation, Akintaju and Oketona left Aon to work for other companies. (Def. Aon St. at ¶¶ 108, 110). Through the course of this litigation, Aon learned that Ekekhor had been convicted of smuggling heroin, which he failed to disclose on his employment application, and terminated his employment with Aon. (Def. Aon St. at ¶¶ 112-114).

## II. Standard of Review

Summary judgment obviates the need for a trial, but is only proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Fed.R.Civ.P. 56c. The party moving for summary judgment bears the burden of proving there is no genuine issue of material fact. *Celotex*, 477 U.S. at 323. In response, the non-moving party cannot rest on bare

pleadings alone but must designate specific material facts in the record showing that there is a genuine issue for trial. *Id.* at 324; *Insolia v. Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir.2000).

A genuine issue of material fact exists if there is sufficient evidence for a jury to return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Alexander v. Wis. Dep't of Health and Family Servs.*, 263 F.3d 673, 680 (7th Cir.2001). In ruling on a motion for summary judgment, however, the court's role is "not to evaluate the weight of the evidence or to determine the truth of the matter," but only to determine whether there is a genuine issue of triable fact. *Outlaw v. Newkirk*, 259 F.3d 833, 836 (7th Cir.2001). Therefore, doubts are resolved in favor of the non-moving party and the court "considers the evidentiary record in the light most favorable to the nonmoving party, and draws all reasonable inferences in his favor." *Lesch v. Crown Cork & Seal Co.*, 282 F.3d 467, 471 (7th Cir.2002).

### III. Analysis

#### A. Failure to Promote Claims

The Plaintiffs allege that Aon discriminated against them when it failed to promote them because of their race and gender, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and in violation of 42 U.S.C. § 1981. Under Title VII it is unlawful for any employer to "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2. Section 1981 prohibits, among other things, discrimination based on a job applicant's race. *Blise v. Antaramian*, 409 F.3d 861, 866 (7th Cir. 2006). Section § 1981 discrimination claims are analyzed under the same framework as Title VII discrimination claims. *Bratton v. Roadway*

*Package Sys., Inc.*, 77 F.3d 168, 176 (7th Cir.1996). A plaintiff may defeat a summary judgment motion in a failure-to-promote case under either Title VII or § 1981 by using either the direct or indirect method. *Jordan v. City of Gary, Ind.*, 396 F.3d 825, 831 (7th Cir. 2005).

Under the direct method, the plaintiff must offer either direct evidence — some type of admission by the decision maker of a discriminatory animus — or a "convincing mosaic" of circumstantial evidence that points directly to a discriminatory reason for the employer's action. *Jordan*, 396 F.3d at 832. Here, Plaintiffs point to no direct evidence; they do not have a smoking gun revealing any discriminatory animus by the decision maker — Rizzo. Instead, Plaintiffs attempt to argue that Rizzo's discriminatory intent can be inferred from circumstantial evidence. In support, Plaintiffs point mainly to self-serving interpretations of Rizzo's behavior. For example, Plaintiffs claim that Rizzo was more cordial to white employees in the office and rarely said hello to them. (Pl. St. at ¶¶ 135-137). They point to rumors, based on hearsay, that Rizzo was "determined" to promote Makowiecki. (Pl. St. at ¶ 139). And Ekekhor claims that Rizzo told him, when explaining the decision to promote Makowiecki, that "life is not fair." (Pl. St. at ¶ 285). None of this circumstantial evidence points directly to a discriminatory reason for Rizzo's action. The Seventh Circuit has identified three types of circumstantial evidence sufficient to form a convincing mosaic from which a fact finder can infer discrimination. *Rudin v. Lincoln Land Community Coll.*, 420 F.3d 712, 720-21 (7th Cir. 2005) (citing *Troupe v. May Dep't Stores*, 20 F.3d 734, 736 (7th Cir. 1994)). First, a plaintiff may rely on evidence of suspicious timing of decisions, ambiguous oral or written statements, or behavior toward or comments directed at other employees in the protected group. *Id.* Second, a plaintiff may rely on evidence that employees outside the protected group received systematically better treatment. *Id.* And third, a plaintiff may rely on evidence that the employee

was qualified for the job and was passed over in favor of an employee not in the protected class and that the employer's reason for the difference in treatment is not worthy of belief. *Id.* Here, the circumstantial evidence that Plaintiffs offer falls short of the kind of circumstantial evidence necessary to form a convincing mosaic pointing directly to a discriminatory motivation. *Cf. Rudin*, 420 F.3d at 722 (decision maker stated that he was "getting a lot of administrative pressure" to hire a more diverse staff sufficient to form convincing mosaic of circumstantial evidence that decision was based on race). Although Rizzo might have more tactfully informed Ekekhor of the reason he did not receive the promotion, the statement that "life is not fair," does not raise the specter of discrimination. Similarly, even if Rizzo had decided prematurely to promote Makowiecki, a predisposition to select Makowiecki, without anything else, does not point directly to a discriminatory reason for his selection. Accordingly, the Court holds that the Plaintiffs have failed to produce sufficient evidence to proceed under the direct method.

Thus, the Plaintiffs must rely on the indirect method. Under that method, a plaintiff first must establish a *prima facie* case by showing that: (1) he is a member of a protected class; (2) he is qualified for the position sought; (3) he was rejected for the positions sought; and (4) the position was granted to a person outside the protected class who is similarly or less qualified than the plaintiff. *Jordan*, 396 F.3d at 833. If a plaintiff establishes a *prima facie* showing of discrimination, the burden shifts to the defendant to articulate a non-discriminatory reason for its decision. *Butts v. Aurora Health Care, Inc.*, 387 F.3d 921, 924 (7th Cir. 2004). If the employer does so, it rebuts the presumption of discrimination and the plaintiff must then show that the proffered reason was pretextual. *Id.* Pretext "means a lie, specifically a phony reason for some action." *Millbrook v. IBP, Inc.*, 280 F.3d 1169, 1175 (7th Cir. 2002) (quoting *Russell v. Acme-Evans Co.*, 51 F.3d 64, 68 (7th

9

Cir. 1995)). In the context of failure-to-promote claims where the employer argues that it selected the more qualified candidate, to demonstrate pretext a plaintiff must establish that his qualifications "so superior to the credentials of the person selected . . . that no reasonable person . . . could have chosen the candidate selected." *Id.* at 1180 (quoting *Byrnie v. Town of Cromwell*, 243 F.3d 93, 103 (2nd Cir. 2001)) (citation omitted); *see also Ash v. Tyson Foods, Inc.*, — U.S. —, 126 S. Ct. 1995, 1198 (2006) (declining to define precisely what standard should govern pretext claims based on superior qualifications but citing with approval standard set forth in *Millbrook*).

With regard to the supervisory position filled by Makowiecki, there is no dispute over the first three elements of the *prima facie* case. Further, because the issue of pretext is intertwined with the fourth element of the *prima facie* case the Court proceeds directly to that issue. *See Hague v. Thompson Distribution Co.*, 436 F.3d 816, 823 (7th Cir. 2006) (issue of *prima facie* case and pretext merge because the question is the same — whether employer is lying). Aon asserts that Rizzo made a business decision that Makowiecki was more qualified than the Plaintiffs for the supervisory position. Plaintiffs, on the other hand, contend that Aon's proferred reasons for selecting Makowiecki over themselves are pretextual. The Plaintiffs first contend that Aon's failure to follow its internal procedures demonstrates that its reasons for promoting Makowiecki were pretextual. Failure to follow company policy is insufficient to demonstrate an employer's reasons for its decision are discriminatory. *Walker*, 416 F.3d at 641. Plaintiffs also argue, with little elaboration, that Aon "lied" about its failure to follow its procedure. While Rizzo's selection process was wholly undocumented, nothing in the record suggests that he lied to the PLaintiffs. And when Groenheim learned that Rizzo had failed to document his process, she investigated his decision-making process. After learning that Rizzo had failed to speak with the Plaintiffs' and Makowiecki's supervisors

regarding their abilities before making his decision, Groenheim sought the supervisors' opinions of the Plaintiffs and of Makowiecki. Although Plaintiffs suggest that Groenheim's investigation was a cover-up and that she lied about the results of her investigation, they point to nothing in the record to support their conspiracy theory. Nor does anything in the record support the Plaintiffs' conclusion that Groenheim lied to them about Rizzo's selection process. Groenheim's refusal to discuss the qualifications of other Aon employees is not a lie, but a business decision that the Court will not second guess.

Plaintiffs next argue that their qualifications are "undisputedly" superior to Makowiecki's. Plaintiffs repeatedly point to their own assessments of their (and Makowiecki's) qualifications, which of course cannot cast doubt on the sufficiency of the employer's proffered reasons for its decision. An employees own perception of his performance "cannot tell a reasonable factfinder something about what the employer believed about the employee's abilities." *Olsen v. Marshall & Ilsley Corp.*, 267 F.3d 597, 602 (7th Cir. 2001). Plaintiffs also point to their resumes and performance evaluations. But Rizzo, rightly or wrongly, decided to fill the first supervisory position by promoting one of the team leaders, without posting the availability of the position, accepting resumes, or reviewing evaluations. Instead, Rizzo based his decision on his subjective evaluations of the four team leaders. Nothing in Title VII bans the use of subjective evaluation criteria, and the mere fact that the employer used subjective criteria does not establish pretext. *Sattar v. Motorola, Inc.*, 138 F.3d 1164, 1170 (7th Cir. 1998). The Plaintiffs contend that Rizzo could not possibly have observed the team leaders for sufficient time to honestly believe his selection. This may be true, but the fact that Rizzo might have made an extremely poor business decision is insufficient to establish pretext. *Hudson v. Chicago Transit Authority*, 375 F.3d 552, 563 (7th Cir. 2004). Plaintiffs also

11

point to Anyaegbunam's testimony that he would not have selected Makowiecki but instead would have chosen Oketona for the first supervisory position. In essence, the Plaintiffs would have this Court replace Rizzo's judgment with Anyaegbunam's. The Court's role is to prevent discrimination, not to act as a super personnel department. *Millbrook*, 280 F.3d at 1181. Further, Earley, the Plaintiffs' immediate supervisor before the department's reorganization, opined that he would have selected Makowiecki. Earley's testimony demonstrates that reasonable minds differ on who should have received the promotion, and therefore the Plaintiffs can establish neither that Aon's reasons for promoting Makowiecki instead of them were pretextual nor that their credentials are so superior to Makowiecki's that no reasonable person could have chosen her for the supervisory position.

The decision to hire Casanova to fill the second supervisory decision merits less discussion. In the job posting, Aon listed two years of supervisory experience required. (Def. Aon. St., Ex. 19). Casanova's resume indicates that she had five years experience supervising a team of twelve people (and an additional three years experience supervising a team of six people). (Def. Aon St., Ex. 23). Among the Plaintiffs' resumes, only Akintaju's even makes passing reference to supervisory experience, and his resume revealed that he had only two years experience supervising a team of only three people. (Def. Aon St., Exs. 20-22). Yet Plaintiffs argue, without explanation, that their supervisory experience exceeded Casanova's (and also, again without any explanation, that Casanova did not meet the minimum requirements for the job). But even putting aside the disparity in the resumes, the Plaintiffs each admitted during their depositions that they were not more qualified than Casanova. (Def. St. at ¶ 81). Accordingly, the Plaintiffs' failure-to-promote claims fail.

B.  Demotion Claims

In their Complaint, the Plaintiffs next allege that they were demoted in retaliation for their complaints about Rizzo's promotion decisions when Aon added "staff" to their (and others') accountant titles. But it is undisputed that Aon changed the job titles of the accountants and senior accountants *prior* to Rizzo's promotion decision. (Def. Aon St., Exs. 28,30; Groenheim Dep. at 229-232). Plaintiffs respond that they intended to present claims that Aon demoted them because of discriminatory reasons. Plaintiffs cannot use their response brief to Aon's Motion for Summary Judgment to amend their Complaint. *Shanahan v. City of Chicago*, 82 F.3d 776, 781 (7th Cir.1996).[3] And even if the Plaintiffs had properly amended their Complaint, any demotion claim based on the change in job title would still be without merit. First, Aon changed the job titles of numerous employees, including employees outside the protected class — making it impossible for Plaintiffs to establish a *prima facie* case of discrimination. And second, Plaintiffs' job duties and benefits did not change and a change in job title, without a corresponding change in job duties or benefits, is not an adverse employment action. *Herrnreiter v. Chicago Housing Authority*, 315 F.3d 742, 745 (7th Cir. 2002); *Gorence v. Eagle Food Ctrs.*, 242 F.3d 759, 766 (7th Cir. 2001).

C.   Equal Pay Claims

Plaintiffs raise also claims regarding their pay based on the Equal Pay Act, Title VII, and § 1981. Plaintiffs claim that Aon did not move for summary judgment on its equal pay claims based

---

[3] Plaintiffs cite *Bibbs v. Bd. of Trustees for the Univ. Of Ill.*, No 98-3029, 1999 WL 569028, *3 (7th Cir. July 30, 1999) to suggest that they need not have included the term "discriminatory demotion" in their Complaint to preserve their claims. Putting aside the fact that *Bibbs* is an unpublished decision of the Seventh Circuit, and therefore may not be cited as authority pursuant to Circuit Rule 53, *Bibbs* is not applicable here. In *Bibbs*, the plaintiff consistently asserted her claim. Here, the Plaintiffs attempt to blind-side the Defendant by transforming a retaliatory discharge claim (which they now recognize has no factual support) into a wholly new claim that they never before asserted.

on Title VII and § 1981, but Aon moves for summary judgment on all of Plaintiffs' claims. Aon bases its motion on its argument that Plaintiffs cannot point to a similarly situated female or white employee who were treated more favorable. The Seventh Circuit has made clear that the Equal Pay Act and Title VII are separate remedies. *Cullen v. Ind. Univ. Bd. Of Trustees*, 338 F.3d 693, 703 (7th Cir. 2004). However, to establish a *prima facie* case for either the Equal Pay Act or a Title VII or § 1981 wage-disparity claim, a plaintiff must demonstrate that a similarly situated employee received favorable treatment — in other words, a similarly-situated employee outside the protected class (or an employee with whom the plaintiff shares a common core of tasks) received more pay. *See Cullen v. Ind. Univ. Bd. Of Trustees*, 338 F.3d 693, 698, 703-04 (7th Cir. 2003).

Plaintiffs point to two possible comparators: Cynthia Reynolds and Traccy DiSanto. DiSanto's job duties, however, were different than the Plaintiffs' duties (DiSanto coordinated Sarbannes-Oxley compliance). DiSanto had a different supervisor than Plaintiffs. And DiSanto worked in a department other than FSC Accounting, in a different office than Plaintiffs. (Groenheim Dep. at 235-36; Anyaegbunam Dep. at 88-89). The Plaintiffs therefore cannot establish that they shared a "common core" of tasks with DiSanto, *see Cullen*, 338 F.3d at 698, or that they were "similarly situated" to her, *see Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 680 (7th Cir. 2002). Reynolds performed Fixed Asset work and was a financial analyst for Aon. Although the Plaintiffs occasionally performed Fixed Asset work, their temporary (and brief) assignments regarding Fixed Asset work does not transform their positions into financial analyst positions. *See Cullen*, 338 F.3d at 698-99. In their 56.1 Statement of Additional Facts, the Plaintiffs point vaguely to the salary guideline for accountants and financial analysts and to some minimum competencies required for each position. (Pl. St. at ¶¶ 44, 48). But to establish that Plaintiffs' accountant positions

shared a "common core" with the financial analyst positions to which they compare themselves, they must demonstrate that the two positions required similar levels of skill, equal amounts of effort, and corresponding levels of responsibility. *Cullen*, 338 F.3d at 698-699. Plaintiffs make no argument whatsoever regarding the factors set forth in *Cullen* — instead they merely assume that Reynolds is an appropriate comparator. Because the Plaintiffs have not pointed to a suitable comparator who made more money than they did, the Court concludes that Plaintiffs have failed to establish a violation of the Equal Pay Act or any wage-disparity claim under Title VII or § 1981.

D. Emotional Distress Claims

Finally, Plaintiffs claim that Defendants inflicted emotional distress upon them. These claims are also are without merit. To get around the Illinois Human Rights Act's preemption of employment-related distress claims, Plaintiffs argue that the Defendants inflicted emotional distress upon them by failing to remedy Rizzo's promotional decision or by making "degrading and humiliating" comments to them after the investigation into Rizzo's decision. But even if Plaintiffs' novel argument brings their emotional distress claims outside the scope of claims preempted by the IHRA, Plaintiffs never specifically set forth any "degrading [or] humiliating" comments, referring to them only vaguely. For example, the Plaintiffs suggest that Groenheim "humiliated" them when they complained about Rizzo's promotion decisions by directing them to meet with Anyaegbunam and Rizzo to find out where they needed to improve in order to be considered for future promotions. They also complain that Groenheim treated them disdainfully and failed to complete an adequate investigation into their claims, suggesting that this failure inflicted emotional distress upon them. But nowhere do the Plaintiffs cite any case law to suggest that an allegedly deficient investigation rises to the level that "the recitation of facts to an average member of the community would arouse

his resentment against the actor, and lead him to exclaim 'Outrageous!'" *Van Stan v. Fancy Colours & Co.*, 125 F.3d 563, 567 (7th Cir. 1997) (quoting *Doe v. Callumet City*, 161 Ill.2d 374, 641 N.E.2d 498, 507 (Ill. 1994)). Illinois Courts recognize that unavoidable aspects of employment, such as personality conflicts or questions related to job performance, frequently produce concern and distress, but that to make such incidents actionable would give nearly all employees a cause of action for intentional infliction of emotional distress. *Van Stan*, 1225 F.3d at 567-68 (collecting cases). Plaintiffs vague allegations do not rise to the level required to state a claim for intentional inflection of emotional distress under Illinois law.

Defendants' Motions for Summary Judgment are GRANTED.

IT IS SO ORDERED.

_8/9/06_
Dated

_Wm. J. Hibbler_
The Honorable William J. Hibbler
United States District Court